NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEMARCO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AVALONBAY COMMUNITIES, INC., *et al.*, <br><br> Defendants. <br><br> VORONOV, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AVALONBAY COMMUNITIES, INC., <br><br> Defendant. | Civil Action No.: 15-628 (JLL) <br><br><br> **OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Count III (Violations of the New Jersey Consumer Fraud Act ("NJCFA")) of the Consolidated Class Action Complaint ("CAC") by AvalonBay Communities, Inc. ("AvalonBay" or "Defendant") pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is premised upon 28 U.S.C. § 1332(d)(2) and (6). (*See* CAC ¶ 21.) No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. After considering the submissions of the parties in support of and in opposition to the motion, the Court grants Defendant's motion to dismiss.

1

I.   **BACKGROUND**

Plaintiffs bring the instant putative class action individually and on behalf of all persons who were tenants or occupants of the Russell building apartment complex and the River Mews building apartment complex at Avalon at Edgewater (together the "Avalon") as of January 21, 2015, and who suffered property damage or other loss as a result of the January 21, 2015 fire that occurred on that date. (*Id.* ¶ 62.) At all times relevant to this litigation, Defendant AvalonBay has been a Maryland corporation who develops, owns, and operates apartment complexes across the country. (*Id.* ¶ 19.) Plaintiffs assert that Defendant "claims to have direct or indirect ownership interests in 274 apartment communities across the country, containing a total of 82,333 apartments." (*Id.*)

Plaintiffs allege that news reports of the January 21, 2015 fire asserted that the fire was "an 'accident' caused by unlicensed plumbers using an acetylene blowtorch while attempting to perform plumbing work in a wall." (*Id.* ¶ 27.) Plaintiffs allege—and supply a supporting fire department violation notice dated February 19, 2015—that no Avalon employees (including the plumbers who started the fire) called 911 or alerted the fire department. (*Id.* ¶¶ 29-30, Ex. A.) Quoting from a separate "Cause and Origin Report" from Michael Blondin of the Arson Task force, Plaintiffs allege that "the majority of the fire had burned from above causing a collapse . . . lightweight building materials were utilized in the buildings construction along with web truss . . . there were plastic piped fire sprinklers in the common areas but there were none present in the voids and/or attic areas . . . there were no fire stops in the attic area and the building was constructed with one common attic." (*Id.* ¶ 36 (quoting Ex. B at 2) (alteration in original).) As a result of the fire, the Russell building "burned to the ground." (*Id.* ¶ 3.) This resulted in the loss of

2

property (both for the Russell building residents as well as for River Mews residents who had storage areas in the Russell building) as well as the loss of tenants' pets. (*Id.* ¶¶ 13-18, 52-53.) Tenants of both complexes were displaced from their apartments, the River Mews tenants temporarily so. (*Id.* ¶ 44.)

After the fire, an inspection was conducted of the River Mews building, which resulted in a "Notice of Violations and Order to Correct" for five separate violations of the Uniform Fire Code. (*Id.* ¶ 50 (citing Ex. C).) Plaintiffs further state that "[u]pon information and belief, the same violations were present in the Russell Building at the time of the Fire and may have contributed to the rapid spread of the fire." (*Id.*)

Based on internet postings and other public statements after the fire, Plaintiffs allege that AvalonBay has a history of fire safety issues. In particular, Plaintiffs point to the following prior alleged incidents:

- **August 2000:** A severe fire during construction of the Avalon complex occurs, which was caused by a ruptured gas line. In February 2005, a jury ruled that AvalonBay's negligence contributed to the fire due to conditions on the construction site;

- **June 2011:** A fire destroyed an apartment complex built in 1997 in Quincy, Massachusetts. "State fire department investigators later declare that faulty construction of the draft stopping in the building's attic and a lack of fire barriers in the balconies allowed the fire to spread more quickly and contributed to the damage";

- **December 2011:** A carbon dioxide leak at a complex in Danvers, Massachusetts results in a woman being hospitalized. Allegedly, the AvalonBay maintenance staff simply removed the detectors when they went off; and

- **April 2003 – November 2012:** Various fire related violations for conditions (such as "smoking refuse," inadequate number and placement of fire extinguishers, improper storage of flammable materials) at construction sites across the country.

3

(*Id.* at Ex. D; *see also id.* ¶¶ 57-60.) Plaintiffs also point to a February 18, 2015 press release issued by AvalonBay that they would "voluntarily enhance the fire protection systems at [Princeton and Maplewood, New Jersey] high density, wood frame communities . . . to comply with the National Fire Protection Association Standard ('NFPA'), 13-a standard, that is greater than what is required by the current building code for this building type." (*Id.* ¶ 61 (alteration in original).)

In addition to these general allegations, Plaintiffs make basic allegations related to specific individuals which identify where the named plaintiffs lived, what property was lost, and how long they were displaced. (*Id.* ¶¶ 13-18.) Plaintiffs do not make any individual allegations related to when they rented at the Avalon, or what advertisements or other representations they saw or heard prior to leasing at Avalon.

Based on the above, Plaintiffs make the following allegations related to their NJCFA claims:

> 20. In connection with its marketing and sale of apartments at the Avalon, Defendant affirmatively claimed that it was offering "the best New Jersey apartments."[1]
>
> 89. Defendant made numerous affirmative statements in connection with the marketing/sale of its Avalon units, touting, among other things, the facilities "beautifully maintained grounds, and top of the line amenities."
>
> 90. Defendant engaged in unlawful conduct in violation of the NJCFA by, *inter alia*, making knowing and intentional omissions regarding the materials in the Edgewater apartment complex, the lack of credentials of the plumbers who were hired to perform maintenance on the building, its history of fire-related incidents, and its lack of regard of the safety and well-being of tenants. Under the circumstances these omissions were material.
>
> 92. A causal relationship exists between Defendant's unlawful conduct and the ascertainable loss suffered by Plaintiffs and the Class. Had Defendant

---

[1] Plaintiffs include in paragraph 20 copies of what appear to be marketing materials for the Avalon. However, the writing is not legible.

4

actually disclosed that, among other things, it would allow unlicensed plumbers to use an acetylene blow torch to perform work on the premises or that the company had a lengthy track record of fire-related incidents that it apparently had failed to address properly, Plaintiffs and Class Members would not have agreed to enter into lease transactions with Defendant.

## II. LEGAL STANDARDS.

Under Rule 8(a), for a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Burtch*, 662 F.3d at 220 (quoting *Twombly*, 550 U.S. at 555) (alteration in *Twombly*).

Additionally, consumer fraud claims under the NJCFA are subject to the "stringent pleading restrictions of Rule 9(b)." *See Frederico v. Home Depot*, 507 F.3d 188, 200, 203 (3d Cir. 2007). Pursuant to Federal Rule of Civil Procedure 9(b):

> [A] plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged. To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Id.* (internal quotations and citations omitted, alteration in original). Furthermore, in class action cases, each "individually named plaintiff must satisfy Rule 9(b) independently" so "[t]he complaint should therefore contain sufficient detail as to [a named plaintiff's] claims to apprise [a defendant] of that plaintiff's exact grounds for relief and the specific conduct that plaintiff charges." *Pacholec v. Home Depot USA, Inc.*, 2006 WL 2792788, *2 (D.N.J. Sept. 26, 2006) (alteration in original); *see also Crozier v. Johnson & Johnson Consumer Cos., Inc.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (same).

### III. DISCUSSION

Defendants argue that Plaintiffs' NJCFA claim must be dismissed because "this is not a consumer fraud case." (Def.'s Mot. at 1.) More specifically, Defendant argues that Plaintiffs have inadequately pled a NJCFA violation based on affirmative misrepresentations or omissions.[2] While the Court recognizes the loss suffered by Plaintiffs, the Court agrees with AvalonBay that Plaintiffs have not pled sufficient facts to establish a NJCFA violation.

"[T]o state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct . . . ; (2) an ascertainable loss . . .; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007) (internal quotations omitted, alteration in original); *see also Frederico*, 507 F.3d at

---

[2] "Plaintiffs do not oppose AvalonBay's motion to dismiss the NJCFA claim to the extent it is based on the violation of regulations promulgated under that statute." (Pls.' Opp'n at 5 n.1.)

202 (3d Cir. 2007).³ Under the NJCFA, "[u]nlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F.3d at 202 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (1994)). But, "[i]mportantly, the conduct, whether it be an omission or active misrepresentation, must be made 'in connection' with the sale or advertisement of a product or service." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 296-97 (D.N.J. Nov. 30, 2009) (quoting *Castro v. NYT Television*, 851 A.2d 88, 95 (N.J. App. Div. 2004)).

### A.     Misrepresentations

The only two CAC paragraphs that Plaintiffs reference identifying alleged misrepresentations are paragraphs 20 and 89. Because the text included from the marketing materials in paragraph 20 is not legible, the Court considers only the identified statement within the typed portion of that paragraph, which asserts that the Avalon apartments were "the best New Jersey apartments." (CAC ¶ 20.) Paragraph 89 further alleges that AvalonBay represented that the Avalon offered "beautifully maintained grounds, and top of the line amenities." (*Id.* ¶ 89.) Even if Plaintiffs could amend their complaint through their brief—which they cannot do, the brief adds only that Avalon offered "thoughtfully designed floor plans." (Pls.' Opp'n at 11.) Plaintiffs argue that these representations "led tenants to believe—incorrectly—that The Avalon incorporated the latest and best luxury construction, when in fact it was a fire trap." (*Id.* at 12.)

Defendants argue that the alleged affirmative misrepresentations were non-

---

³ The parties do not dispute that a landlord-tenant relationship may form the basis for a NJCFA claim. *See Heyert v. Taddese*, 70 A.3d 680, 695 (N.J. App. Div. 2013) ("It is well-established that the broad scope of the CFA encompasses transactions between residential tenants and their landlords.")

7

actionable puffery. (Def.'s Mot. at 6 & n.2.) They further argue that even if the identified representations were not considered puffery, the allegations as pled fail to meet the pleading requirements of Rule 9(b). (*Id.* at 11-16.) Plaintiffs acknowledge that "[t]he NJCFA distinguishes between actionable misrepresentations of fact and puffery." (Pls.' Opp'n at 11 (internal quotations omitted).) They further acknowledge that "[p]uffery includes vague, highly subjective advertising claims, as opposed to specific factual assertions that can actually be verified." (*Id.*)

Aside from the challenged representations not saying anything about construction, much less a specific factual statement about the construction, the Court agrees with Defendants that the few statements that were identified by Plaintiffs are puffery, and as such are not actionable. *Compare Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *5 n.7 (D.N.J. July 24, 2015) ("[C]laims of 'substantial savings,' 'low, competitive rates,' 'exceptional value,' and 'great savings' are not factual assertions. As such, they are not actionable under the CFA."); *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at *6-7 (D.N.J. Dec. 29, 2011) (dismissing claim and holding that statements that the cars were "Rated 4 stars in recent crash tests," "MINI is ready to serve and protect," and "[a] powerful ally in the war against loss-of-control" were non-actionable puffery); *Hughes v. Panasonic Consumer Elec., Co.*, No. 10–846, 2011 WL 2976839, at *12-13 (D.N.J. July 21, 2011) (dismissing claim and holding that statements such as "industry leading black levels and contrast ratios," "the way the director intended," and "breathtaking" and "vivid" colors are non-actionable puffery); *Glauberzon v. Pella Corp.*, No. 10-5929, 2011 WL 1337509, at *9 n.4 (D.N.J. Apr. 7, 2011) (statement that "window combinations were of the highest quality" held to be "puffery and thus not

8

actionable"); *Slack v. Suburban Propane Ptnrs., L.P.*, No. 10-2548, 2010 WL 3810870, at *5 (D.N.J. Sept. 21, 2010) (dismissing claim and holding that "[t]o the extent Plaintiffs allege that Suburban Propane affirmatively misrepresented the cost of the propane by charging them prices higher than industry averages despite stating on their website that '[w]hen you shop at Suburban Propane, you get ... the best value!' and publicly claiming that their prices are 'competitive,' such statements are 'not statements of fact, but are merely expressions in the nature of puffery and thus are not actionable.'") (internal citations omitted); *In re Toshiba Am. HD DVD Mktg. and Sales Practice Litig.*, No. 08–939, 2009 WL 2940081, at *9-10 (D.N.J. Sept. 11, 2009) (dismissing claim and holding that statements that something is the "best" or "For Today, Tomorrow and Beyond" are puffery); *New Jersey Citizen Action v. Schering–Plough Corp.*, 842 A.2d 174, 177 (N.J. App. Div. 2003) ("The central contention of plaintiffs is that statements in DTC advertisements which used such phrases as 'you . . . can lead a normal nearly symptom-free life again' were intended to be understood by consumers as a guarantee of total and universal effectiveness of the product. That contention is meritless.") (affirming dismissal of complaint) *with Lieberson v. Johnson & Johnson Consumer Cos.*, No. 10–6196, 2011 WL 4414214, at * (D.N.J. Sept. 21, 2011) (product labels touting that the products were "*clinically proven* to help babies sleep better" was not puffery) (emphasis added).

Even assuming that the challenged representations were not puffery, the CAC provides no information as to when the representations were made, whether any Plaintiff actually saw the representations, or when they saw them. *See Mladenov v. Wegmans Food Markets, Inc.*, Nos. 15–00373, 15–00382, 15–00618, 2015 WL 5023484, at *9 (D.N.J. Aug. 26, 2015) ("Since plaintiffs did not identify when the alleged misrepresentations were

9

made and which particular advertisements plaintiffs had seen, the Court held that the complaint failed to satisfy Rule 9(b)'s particularity requirements. The instant cases suffer from the same defect.") (internal citation omitted); *In re Ridell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433 (D.N.J. 2015) ("Plaintiffs' scatter-shot pleading lists examples of Defendants' marketing statements without identifying which specific statement(s), if any, Plaintiffs were exposed to.").

Additionally, even had Plaintiffs sufficiently plead the representations with particularity including with respect to the individual plaintiffs, Plaintiffs have plead no facts for how such statements could reasonably be construed to mean that Avalon was offering the "latest and best construction" or even what that non-specific phrase means.

**B.   Omissions**

Plaintiffs' NJCFA claim based on omission is derived from allegations that Defendant was required, but failed, to disclose: (1) the building materials used in construction of the complex, (2) the "lack of credentials of the plumbers who were hired to perform maintenance on the building," and (3) AvalonBay's "history of fire-related incidents" at its various properties. (CAC ¶ 90.) AvalonBay argues that, as a matter of law, none of these items can form the basis for a NJCFA claim based on omissions because there is no duty to disclose such information. (Def.'s Mot. at 7-10.) AvalonBay further argues, even if not insufficient as a matter of law, Plaintiffs' allegations are insufficiently pled. (*Id.* at 11.)

To state a claim based on omission under the NJCFA, "the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." *Cox*, 647 A.2d at 462 (emphasis in original); *see also Holt v. Laube*, 2011 WL 6141466, at *8

(N.J. App. Div. Dec. 12, 2011) ("[T]he plaintiffs must show that the defendant had actual knowledge of the material fact and acted knowingly with an intent to deceive."). Thus, knowledge and intent at the time of the transaction are required to state a NJCFA claim based on omission.

Instead of citing to NJCFA cases demonstrating that allegations similar to those made by Plaintiffs are sufficient to state a NJCFA claim based on omission, Plaintiffs cite to two cases related to landlord-tenant duties, one from 1959 and one from 1974. The first case stands for the proposition that a "landlord, *knowing* of an actually or deceptively concealed dangerous condition on the premises is under a duty to disclose it to the tenant at or prior to the transfer of possession." *Faber v. Creswick*, 31 N.J. 234, 242 (N.J. 1959) (case where the defendant had put plasterboard without support over a stairwell without informing the tenant, who later fell through it) (emphasis added). The second held that a landlord is "under a duty to disclose a material latent condition, known to him but unobservable by the tenant." *See also Weintraib v. Krobatsch*, 64 N.J. 445, 456 (N.J. 1974) (case dealing with an alleged *known* but undisclosed infestation) (emphasis added). Aside from not dealing with NJCFA claims, none of Plaintiffs' alleged omissions are analogous to these cases as currently pled.

**Building Materials**. Plaintiffs do not allege that the Avalon was not built to code. And, Plaintiffs have cited no case that holds that a building that is lawfully constructed using materials approved by the building code can be found to be a "concealed dangerous condition." That AvalonBay may have chosen after-the-fact to voluntarily *exceed* the lawful building requirements on newer buildings is of no moment for a NJCFA claim. Plaintiffs also have not provided any law requiring a landlord to disclose all building

11

materials to prospective tenants, much less law saying that failure to disclose such information can form the basis of an NJCFA claim. Additionally, Plaintiffs' statement that "[h]ad Defendant actually disclosed that, among other things, it would allow unlicensed plumbers to use an acetylene blow torch to perform work on the premises . . . , Plaintiffs and Class Members would not have agreed to enter into lease transactions with Defendant" (*see* Pls.' Opp'n 15), says nothing about what AvalonBay knew, when it knew it, or even if the use of such a blow torch was improper under the circumstances. In short, Plaintiffs have offered no support for a NJCFA claim based on this alleged omission.

**Plumbing/Maintenance Worker Credentials**. Plaintiffs offer no support for their assertion that failure to provide maintenance worker credentials in general can form the basis for a NJCFA claim. Plaintiffs again appear to be overlooking the requirements of NJCFA claims: they must show not only that the omission was a material fact that was required to be disclosed, but that the fact was *knowingly* concealed, at the time of the transaction, with the intent that the plaintiff rely on the concealment, and that such omission was *causally connected* to the loss. The CAC contains no such allegations with respect to maintenance credentials. Even if Plaintiffs had alleged that AvalonBay knew that there could be some risk of some unidentified harm because they planned, prior to leasing the units to Plaintiffs, to use unlicensed maintenance workers (which they have not so alleged with any particularity, if at all), such an allegation would be insufficiently specific to state a NJCFA claim.

**Fire Safety History**. Again, for an NJCFA omission claim, Plaintiffs must establish that, at the time of the transaction, Defendant knowingly concealed a material fact with the intent to deceive. Essentially what Plaintiffs assert with respect to the fire

violations in their briefing is that Defendant knew the Avalon was a "fire trap" when they rented the apartments. (*See* Pls.' Opp'n at 11, 15.) First, this is not a case, for example, where Plaintiffs allege that, prior to renting the apartments to the various Plaintiffs, there were warnings or violations from the fire department that unsafe conditions existed at Avalon, that Avalon failed to remedy the violations knowing there was a risk of fire absent remediation (much less a certain or even likely risk), and that Avalon failed to disclose that information to Plaintiffs so as to induce them to rent at Avalon.

Second, Plaintiffs have not cited to any case that provides that generally there is a duty of a landlord to disclose all past safety or building issues of any kind at any property the landlord does or has owned. The vast majority of past violations alleged by Plaintiffs relate to conditions on constructions sites, not occupied apartment buildings, and the violations have nothing to do with the event at issue here. The remainder—like an issue with carbon monoxide alarms at another property—do not appear to have any relation to what happened here based on the pleadings. Additionally, the reference to an after-the-fact fire inspection that showed existing violations of the fire code at the River Mews building says nothing about the conditions that existed at the time Defendant leased the property. Plaintiffs appear to be arguing not only that there was an original duty to disclose at the time of the transaction, but that under the NJCFA there was a continuing duty to disclose. Again, Plaintiffs cite no authority for such a position, nor do they allege that Defendant had any awareness of existing violations at the time of leasing the apartments or even at the time of the fire (even if knowledge at that time could form a basis for a NJCFA claim).

Far from being a "a textbook example of a NJCFA claim" as Plaintiffs assert,

13

without supporting citations (*see* Pls.' Opp'n at 9), the current allegations do not come near to stating a plausible NJCFA claim based on omissions, much less one pled with sufficient particularity. The Court understands the emotion behind the pleadings, but Plaintiffs must understand that not every alleged wrong can be remedied with every cause of action. *Cf. Akhtar v. JDN Properties at Florham Park, L.L.C.*, 2015 WL 751769, at *5 (N.J. App. Div. Feb. 24, 2015) ("Although the breach of contract here was devastating to the construction, the extent of damages does not in itself prove a CFA violation.").

## IV.   CONCLUSION

For the reasons set forth above, AvalonBay's motion to dismiss is granted. Although Plaintiffs' current allegations suggest that they may not be able to state a valid NJCFA claim, the Court will provide them an opportunity to re-plead the claim. Therefore, the dismissal of Count III is without prejudice. Plaintiffs may file an amended complaint by December 3, 2015. Failure to do so by this date will result in dismissal of Count III with prejudice. An appropriate Order accompanies this Opinion.

DATED: November 3, 2015

JOSE L. LINARES
U.S. DISTRICT JUDGE